Good morning. May it please the court, I'm Kenneth Triano and I represent the appellant Flora Espino. I'd like to reserve four minutes if I can. Sure, I'll try to let you know when that happens. Thank you. We've raised in our appeal four basic areas of litigation, four main issues, and I was going to address them in the order that they appear in the reply brief, and certainly there's a lot of ground to cover if the court wants to direct me to any specific issue. I'd be glad to take those on first, but as far as the first issue was the Defense Exhibit 213, which was a document, an email that we had tried to bring into evidence, admit through the government's witness, and that we thought was a critical bit of evidence, and the court's failure to allow us to admit that denied Mrs. Espino an opportunity to fully present her defense, which is an issue of constitutional magnitude. In this case, she was not disputing that she was saying, or through our defense, she didn't testify, that she did not remember or was less likely to remember having done it, because it only took 22 minutes of her life to respond to the request for the letter, and that the information, the specifications for what was put in the letter was given to her by Jesse Rodriguez and Annette Macias, who were a loan officer and a loan processor, and the government admitted their Exhibit 2, and they also admitted Exhibit, which contains that information, but they also admitted an email Exhibit 1, which R-213 applies to, and in 213 we thought it was very critical to her defense, because it was what she should say, and that was corroborative of our defense that she wouldn't remember this three years later, when somebody shows up at her office, shows her one letter, not any other documentation, and asks her if she did this letter, and then three weeks later she's before the grand jury. Same thing, none of the other evidence that was brought in the trial was ever shown to her when she was questioned before the court, and also that it wasn't hearsay. We offered three exceptions, or three grounds for the court to consider, one that it was not hearsay. We weren't trying to prove the contents of the letter, that the police detective had this business on the side, which was a fabricated business, fabricated by Rodriguez and Macias, and that he was actually consulting with Mrs. Spino. So if the email didn't get in, did Mrs. Spino try to introduce the email by calling her own witnesses? Well, she didn't testify, and we didn't... But you still couldn't call witnesses. Yes, we could call witnesses, but the best one was on the witness stand, Agent Portera. He's the one who testified. He was the most credible witness at the trial. We never challenged his credibility. He testified as to all the documentation. He knew how the he was able to lay the foundation, I believe, for a business record exception for this email through him. The court sustained the government's objection to that on authentication grounds, but he was actually a witness with personal knowledge of the email and how it was prepared. So this is Exhibit 213, right? Yes. So could you call Rodriguez or Macias? Well, Rodriguez was charged of face and sentencing, and Macias was a difficult witness. She was a government witness. She was a cooperator. She had no signed plea agreement. She had no written promises that she wouldn't be prosecuted. She was just doing it on a promise implied or inferred from the government, and calling her as a witness was just too risky for the defense. I had no idea what she would say. We were never given an opportunity to interview her. Our opportunities were all turned down except on the day of trial when she showed up with her lawyer and the government prosecutor side by side. So that was just not really a possibility for us. So I'm interested in the verdict form. That's what I'm really interested in because, you know, I'm a trial judge, okay? So you get the verdict form. It's got a blank. And the blank the jury puts in, guilty or not guilty, right? That's what the verdict form was? Well, unfortunately in this case it was different because it had a reasonable doubt standard. But you didn't pick it up when you saw it the first time. If you didn't pick it up and the government didn't pick it up and the judge didn't pick it up, what difference does it make to the case if the instruction is right for the rest of the instructions? And the jury wrote in guilty, right? It's incorrect, though. That's the problem. And it does fail under the standards of Sullivan v. Louisiana where a reasonable doubt, an inaccurate or incorrect reasonable doubt. Well, the jury instruction was not wrong. They gave the correct jury instructions on burden of proof, correct? But the verdict was wrong, and the government concedes that the verdict was wrong. No one caught it up. Right, but that form is the only place where the burden is shifted to the defense to show beyond a reasonable doubt that they're not guilty. And that verdict form was not sitting in the courtroom for hours beforehand. It showed up at the very end of proceedings where I had requested a specifically different verdict form. I wanted a verdict form that listed the two statements that were charged in the indictment, the two remaining statements. The court overruled that. Is there a place in the law that says when something shows up at the last minute and you look at it that you don't have to object? Is there a case you can cite for that? I mean, I realize I've been a trial lawyer. I've been a trial judge. I know that. But I think that still puts you under plain error, right? Well, it puts us under plain error if you find that all of the efforts up until that point didn't constitute an objection or a dispute. There's no case where somebody was fighting vigorously over the verdict form and then it was considered plain error, and I think that's a big difference. And I think you also have to look between the lines a little bit on this case, and it might be going from the record. I think you can read this from the minutes and things that are in the record, is that government counsel waged basically a war of attrition and it wore down the court and possibly myself. By the time we saw that verdict form, we were an hour, hour and a half past where we were expected to be starting our closing arguments. Is the verdict form subject to a harmless error analysis? No, it would be if it's plain error. Well, if it's not structural error, it's subject to a harmless error analysis, correct? Well, harmless beyond a reasonable doubt. Okay, but it's still subject to a harmless error. So the jury came back in, what, one hour? How long a trial was it? Something like that. It was the next day, though, and they did get to sleep on it. And I've been doing this long enough that I don't think there's a juror in the world who doesn't think about the case after closing argument. But you waited. You didn't read that verdict form between the time it was submitted and the time the jury verdict came in, and you could have said to the judge, wait a minute, judge, we've got a bad verdict form. Maybe we should change it so the jury doesn't get confused. I saw it when the first time I saw that defect in it. I didn't sit on it. The first time I saw the defect on it was when the jury came back. Yeah, after the verdict. Okay. And the court had read it to the jury as it was. And I don't think that harm ñ I believe it is structural error, because I think that shifting the burden of proof to the defense to acquit themselves beyond a reasonable doubt is structural error. But harmless beyond a reasonable doubt, the court made rulings that you also have to look at the cumulative error possibility of some of the evidence coming in that shouldn't have come in in this case. And that's our third issue. What's your best case on cumulative error? That always seems to be a last-ditch argument. I mean, there are very few cases where cumulative error, you've got to find the one good error. There's a recent case, Prescott, I think, that just came down from the circuit, and I think it covered the issue pretty well. I think there are others. I've cited numerous cases, but usually they don't engage in a lot of discussion. So if we engage in harmless beyond a reasonable doubt, does the strength of the evidence, is that something that comes into the calculus? Well, the strength of the evidence, but also the reliability of it, the admissibility of it. I think certainly when you look at, say, sufficiency of the evidence, you have to look at the evidence that shouldn't have come in and still consider that. That's what the rule is. But there's no rule that says harmless beyond a reasonable doubt requires the reviewing court to ignore errors the district court may have made in failing to admit or admitting objectionable evidence that should not have been admitted. And I think in this case there was evidence like that, and I don't think we can go only by the amount of time that the jury deliberated the following day. The other issue with the 404B and 403 analysis of the prior act's evidence is there's a lot to that issue, but I think the two things that need to be pointed out is that this was not a fraud trial. It was not a conspiracy trial. It was not a trial about whether Mrs. Spino did the 2006 letter. The 2007 letter, therefore, had less probative value to the district court's analysis. And, in fact, the district court, even in its own ruling prior to trial, and we cite this in our excerpts of record at 111 and 112. So you're talking about the CPA letter, right? Yes. So the CPA letter, I would see two areas where you have 403, which is as substantial evidence of guilt, or 404B as evidence of lack of mistake or accident, right? Yes. Those are the two avenues for admission of those. And then do we look at abuse of discretion? Well, I think that abuse of discretion does apply as the standard there. I'm just going to alert you. You can answer the question, but you're getting under four. All right. Well, I'll just try to stop at three, then, maybe. Okay. Yeah, abuse of discretion definitely counts, but the district court ignored its own 404B ruling, and that's what the cite I just gave was. It said that it was 404B, that 2007 letter, unless and possibly inextricably intertwined, which it was not. And I think the court let it then go to the jury, which the government then argued to the jury as substantive evidence. And I think that should be a de novo review. I'll save my last one. Okay, thank you. Thank you. Good morning. Good morning. You may have pleased the court, Daniel Zipp on behalf of the United States. Your Honor, starting with the verdict form, this court should review for plain error. All right. So you're saying it was a mistake. Yes. It's error. We agree. That language should not have been phrased that way. Were you the trial lawyer? I was not, Your Honor. Okay. Thank you. So we can't say you were asleep at the wheel, too. So what happened? The defendant did ask for a special verdict form, right, that broke down the jury's findings. As to which false statement? The government objected. That issue was first raised at the very outset of trial. I'm not sure that we didn't agree with it. And then it starts at S.E.R. 559. How did this verdict form come to be given to the jury? So starting at 559, the parties returned to the courtroom, and the judge has essentially two versions of the verdict form. Both of them have the problematic language in there about, beyond a reasonable doubt, applying to the not guilty. One of them apparently has the listing of the two false statements. Who submitted that? The defendant submitted it? That's my question. How was it generated? So the defendant submitted the offensive language that nobody picked up? No, Your Honor. I think the court produced itself. The court concocted that. Okay. It looks like he printed them off and the parties all began discussing that. I took it that the defendant wanted to make sure, because there were two statements, right? Yes. And the defendant wanted to make sure that we knew that all of the jurors agreed beyond a reasonable doubt as to at least one statement, right? Correct. Because it could be one or two. But let's say some thought one was and another thought the other was, and I think they were trying to break that out. And the court said, no, we're not doing that. Yes. The court said there's a separate unanimity instruction that neither of these trigger any sort of mandatory minimums. It's not the type of case where you need to know. Go back to your answer about the two verdict forms being presented. The court generated the verdict forms? I wasn't there. But reading the record, that appears to be that they talk about the clerk has them and then the parties begin discussion of the two forms there. And both had this problem, but then nobody picked up on it. Correct. The only discussion and dispute was as to the second half, was whether it includes the two below or not. Ultimately, the court came around to the government's position and said, we're not going to break that out at the end. But that issue of the problematic language was there all along and no one said a word about it. And even at the objection, after the jury returned its verdict, the defense counsel says, I wish I would have thought of this sooner. And the court says, yes, it's too late at this point. How far back does that go? There was some discussion at the beginning of the trial about this issue, wasn't there, about the verdict form? Yes. And when did the court generate these two alternatives, at the beginning of the trial or at the end? No, Your Honor, that was at the end. Okay. So it was sort of flagged at the beginning, and then when the court put together its jury instructions, it handed the two up and then the discussion started from there. So your position is that it becomes plain error. Yes. So is – I took the appellant's position that obviously structural error puts it into a whole different area. So why is it not structural error? Why is it plain error? And then if it is plain error, how is harmless error applied? What are the factors that would make it harmless error? Yes, Your Honor, I think to answer the first question, this case is – Well, let's say – let's just say if the jury instructions said the defendant must prove himself not guilty beyond a reasonable doubt. Would that be structural error if the jury instruction had said that? If that's all the jury instructions, that's all they said? I think that would be – Well, it said the people must prove the defendant guilty beyond a reasonable doubt before he can find – but the defendant must prove himself not guilty beyond a reasonable doubt before he can find him not guilty. Would that be structural error? That would be close to the facts in Sullivan. I still think at that point what the Supreme Court in Sullivan said – Well, I know, but we don't have – okay. That's not what happened here. I know that. They gave the right jury instructions. But I'm asking you, if they had given – said that before you find the defendant not guilty, you must be convinced beyond a reasonable doubt and agree to that unanimously, would that be structural error in a case? And no – possibly not, Your Honor. And I think if the other half also said the jury has to find beyond a reasonable doubt that the defendant is guilty, what the issue in Sullivan – I hope you never give that instruction. I mean, I hope you never proffer that instruction because – What the Court said in Sullivan was the reason that it becomes structural error to have a faulty reasonable doubt instruction is because it takes away the role of the jury altogether. The Supreme Court said they can't view what the verdict even was. But a not guilty verdict does not have to be beyond a reasonable doubt. A not guilty verdict means the prosecutor has not met its burden of proof. Yes, Your Honor. And so if 12 people say, I don't know whether you're guilty or not, but I do know that the prosecutor didn't meet the burden of proof. So it's clearly erroneous to say you can only vote not guilty if you all agree that he is not guilty beyond a reasonable doubt. Absolutely, yes. We agree with that. Okay. Here on the verdict form – all right. In this case – It's different than the instructions were correct. And that was the point I was going to make, Your Honor. Throughout the trial, starting at the initial instructions, continuing on the elements instruction, on the final instruction, and even in the government's closing argument, again and again, the Court stressed that it is the government's burden to prove beyond a reasonable doubt. Okay. So if we do the harmless error analysis, why is it harmless error? You've conceded it's error. The verdict is error, right? Yes. But you say it's harmless. Why is it harmless? What are the factors in this particular case that make it harmless error? There's two main ones, Your Honor. First, what I just described, the fact that all of the other jury instructions uniformly gave this the correct burden of proof. So the idea that the jury still somehow flipped it and came out the exact opposite way when they were instructed three separate times about the proper burden of proof Why does the strength of the case matter? Yes. And that's the second point, that the weight of the evidence in this case was overwhelming, Your Honor. And the jury returned a verdict in essentially one hour of deliberation. So that also goes to there's no suggestion that the court was or that the jury was somehow divided or couldn't agree on a verdict and maybe this idea that some of them wanted to vote not guilty but thought they had to reach beyond a reasonable doubt to find him not guilty or find her not guilty. None of that. It's very unlikely. Hypothetically, would it be harder to prove harmlessness if the jury had asked questions about the verdict form and the court gave erroneous advice on that? Yes, absolutely. If the jury came back and said we're split 6-6 and half of us want to vote to acquit, can you explain what the burden are? Well, first they couldn't tell us the number. Well, okay. But if three days went by and they asked for a further explanation about what the burden of proof was for a not guilty verdict and the court continued with this erroneous language, then absolutely, then you'd be in a potentially harmful realm. But in this case, given the strength of the evidence, given the brief amount of time that the jury deliberated, the appellant simply hasn't met their burden of showing harmless error. So is there any place in the instructions that the judge gave that says, that uses the word reasonable doubt except the defendant's guilt? No, Your Honor. And so if you look at this verdict form, it says reasonable doubt blank. So isn't the jury going to think they have to put guilt if it's going to be reasonable doubt? No. I mean, what I'm saying is it seems to me that this verdict form might be ambiguous at best. And if the only place in the entire jury instruction that talks about reasonable doubt has to do with guilt as opposed to proving beyond a reasonable doubt innocence, the only way you could read this instruction is saying if you're going to find beyond a reasonable doubt something, it has to be guilt. Well, Your Honor, I don't think that that's a clear interpretation of the language. And I think when you view all of the court's instructions in totality along with the verdict form, we can't say that the defense hasn't shown that this would have been harmful or that it would have affected the ultimate outcome of the case. Okay. Thank you. The other main issue the defendant raised was this Exhibit 213. He offered a number of reasons why the court should have allowed it into evidence. The problem was this was coming in while the government's case agent was on the stand, sort of through cross-examination of the government witness. The initial argument was that under the rule of completeness that this email should have come in because the other emails were around the same time and involved the same party. But there was nothing about this second email that in any way distorted or made unfair the emails that the United States brought in. And to the extent the defendant tried to get these in as a business record through the case agent, the relevant transcript at ER 54 through 55 shows that this case agent, it's clear he wasn't even aware that he was serving as a custodian in response to these questions. It was sort of a confusing exchange as to what these emails were and what the practices of the company were. And he earlier testified that he got this email through a search warrant on the Yahoo account. So he was not a custodian of records. The court even told the defense afterwards, you can bring this in in your case, call Ms. Macias. She was there in the courtroom. There was a lot of discussion about her taking the stand. Could they have presented it by recalling the agent in the defense case and bringing the rest of the emails? Would the government have objected to that? He still wouldn't have been a custodian of records for the Terra Finance Company. So maybe if they developed the record further, the court could have allowed it. But the government got in its email. We did, Your Honor, but that was through a separate hearsay avenue. We got our emails in because they were co-conspirator statements. But that's a one-way door. It only comes in against the party. And that's what the district court held. He can't stand up then and use the same co-conspirator exception. Well, you could call an actual custodian of the records, though, too. I mean, there would be some custodian of those records, right? Yes, or even a certificate from a custodian of records would have been enough to get it in. Or Ms. Macias herself to talk about what was in the email. So there were a lot of avenues. This specific one, cross-examining the case agent to get it in under a rule of completeness or as a business record, was just not consistent with the rules of evidence, and the court was within its discretion in keeping it out. There were a lot of other evidentiary issues I'm happy to answer any questions if the court has. We don't appear to. Okay, thank you. Thank you. Thank you. To follow up on the last discussion on the email, the Rule 803-6 says that the conditions, the foundation, have to be shown by the testimony of a custodian or another qualified witness. The fact that I was able to commandeer Agent Portera for five minutes of his entire testimony doesn't mean he's not qualified. He laid the foundation for everything. He investigated the whole case. But he's not a custodian of the records. That's one of two options. The person with knowledge is the other. But once that effort failed, why didn't you try to get the email chain into your defense case through some other means? Well, at that point in time, to be honest with you, the business record exception came up then in my head, and that's when I went for it. There was no other witness. The government hadn't called any of the other people custodians to testify. They relied on the certificate. In fact, they relied on it, I think, to their detriment, because we're arguing that this is de novo review on this issue because the court excluded necessary defense evidence for one and also its choice of what rule to apply. The government objected. They said it wasn't authenticated with a certificate. That's a self-authenticating record. This was authenticated by a witness who is better than a custodian of records because he actually knows what was going on in those records, and he was the one that dug them all out and put them in order. So I think that that is critical, and he was qualified to do it, more qualified than anybody else. It just came about in an unusual way. As far as the verdict form is concerned, the court did draft it. The parties viewing it came up at the very last minute. Looking at the strength of the evidence, I think this court should consider the 2007 letter, CPA letter, as something that shouldn't have come in and that does weigh on the strength of the evidence and also on this Exhibit D213. But to get to the direct verdict form in another way, normally I hate to argue insufficient evidence because it is such a tough standard, but in this case there were two questions. If you actually read the grand jury transcript, the grand jury, we don't know what the trial jury decided on which statement because there was no directed verdict. If they found her guilty because of the first allegation that she had heard of Jesse Rodriguez, the record is insufficient because when she was questioned, she was asked, do you know RSK, which is a company named? Jesse Rodriguez, Brian Peterson, in succession, she said no, no, no. Then she was asked, have you heard of either of those names before? And she said no. Well, which two of the three were they asking? That's vague. Anytime there's been any appellate decisions on perjury and false statements, the onus is always on the person asking the question to be crystal clear in what they're asking. And in this case, they were not crystal clear. They asked, have you heard of those names? And we don't know which one she was saying no to. And also the context has to be looked at. Up until the moment she testified before the grand jury, the name Jesse Rodriguez had never been mentioned to Mrs. Spino since 2006 when she did that letter. So when the agents came to her office in 2009, they didn't mention it. They didn't show her any of these other documents. And when they put her on the stand before the grand jury, that was the first time Jesse Rodriguez's name was ever mentioned. So I think that narrows the focus of what was going on in her mind, whether she knowingly made a false statement about hearing the name Jesse. All right. I've allowed you to go over. So if you would wrap it up, that would be excellent. Thank you. Thank you both for your arguments in this matter. It will stand submitted.
judges: Callahan, Nguyen, Bataillon